THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROLLIE ELSNER, Defendant-Appellant.

(No. 12424;

Fourth District—May 1, 1975

TRAPP, J., dissenting.

John F. McNichols, John L. Swartz and J. Daniel Stewart, all of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (J. William Roberts, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant Rollie Elsner pleaded guilty to burglary on December 6, 1971. He was sentenced to 3 years' probation, with the first 6 months to be spent at the State penal farm at Vandalia. On February 16, 1973, the State filed a petition to revoke probation. Following a hearing, probation was revoked on May 4, 1973, and defendant was sentenced to 6 to 18 years in the penitentiary, with credit given for slightly over 1 year on probation. He contends that the sentence imposed was excessive and that the court abused its discretion in failing to offer him the opportunity to be examined for treatment under the Dangerous Drug Abuse Act. Ill. Rev. Stat. 1973, ch. 91½, par. 120.1 et seq.

In committing the burglary defendant broke into a home and took certain coins, a small amount of old money, a Timex watch, and a cigarette lighter. The occupants were out of town at the time and the property taken was recovered. The uncontested evidence of violation of probation was that a person identified as the defendant had walked into a grocery store and with his hands in his coat pockets demanded and obtained the money on hand from a young female clerk. Probation was revoked.

In mitigation defendant offered as witnesses his sister, father, stepmother, and former wife. They all testified that they believed that defendant used drugs. No specific instances were cited. The father testified that the use had existed for the past 1½ to 2 years and that when his son was under drugs he would sit "like he has past out and you tell him some-

thing and he wouldn't remember it." The stepmother testified that he was more reasonable when off drugs and the ex-wife testified that when on drugs he could not think rationally or act responsibly. She identified the substance used as barbiturates. Both the women stated that they felt that defendant was presently in need of help to break his drug habit.

The defendant also adopted the presentence investigation report of the probation officer. This report indicated that prior to the burglary conviction the defendant had been convicted for disorderly conduct and resisting arrest in 1968 and spent 20 days in jail; that he had an undesirable discharge from the army; that he had a son living with its mother and that both of them received A.D.C. payments; that defendant was unemployed since 1970 when he had been fired from his job. The probation officer indicated that several persons he contacted thought the defendant acted strangely and was on drugs. Near the end of the report it was stated "this appears to be a case of total drug involvement." The defendant concedes that during the period of probation he was convicted of a narcotics charge for which he served 4 months' incarceration.

■■ Defendant elected to be sentenced under the law in effect at that time which provided that burglary was a Class 2 felony, the imprisonment sentence for which was 1 to 20 years with the minimum term to be no greater than one-third of the maximum (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1). Thus, the most severe sentence possible would be for a minimum term of 6⅔ years and a maximum of 20 years. Because the sentence imposed approaches that and is much more severe than the original grant of probation, defendant contends that he is being sentenced for the robbery. To do so would be improper. *People v. White*, 93 Ill. App.2d 283, 235 N.E.2d 393.

Defendant argues that the acts of robbery which he committed should not be considered at sentencing for any purpose. He calls our attention to two cases decided by the appellate court of this State for the first district where sentences imposed upon revocation of probation for a subsequent offense were reduced on review. In each case the court stated:

> "Two factors are of moment in a probation revocation hearing. First, the nature of the acts which initially lead to the revocation hearing and second, the nature of the offense of which the probationer was initially convicted. The first factor is relevant in determining whether or not probation should be revoked. The second is relevant to the sentence imposed, if probation is revoked." *People v. Lewis*, 3 Ill.App.3d 144, 147, 278 N.E.2d 267, 268, and *People v. Carney*, 3 Ill.App.3d 24, 278 N.E.2d 484.

■■ Subsequently, however, a different division of the court for the same district in a similar case set forth a rule we deem to be correct:

"When imposing a sentence, the court must consider in detail not only the acts committed, so as to proportion the penalty to the seriousness of the offense charged, but it must also, by statutory command, take full cognizance of all factors relevant to the rehabilitation potential of defendant as an individual. (Ill. Rev. Stat. 1967, ch. 38, par. 1—2(c).) * * * . We can agree with defendant that the sentences to be imposed must be for the original crime or crimes (as in this case for the original burglary and three armed robberies) and not for the crime which constituted the probation violation. But it is a different matter altogether to foreclose the sentencing judge from considering the latter crime to determine the defendant's 'rehabilitation possibilities' which the statute requires him to do." *People v. Ford*, 4 Ill.App.3d 291, 293, 280 N.E.2d 728, 730.

■■ Under the Unified Code of Corrections, the sentencing judge must consider "the history and character of the defendant" before fixing the minimum term of imprisonment for any amount of time greater than the shortest term allowed (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(c)). Misdeeds occurring up to the time of sentencing are relevant to the defendant's "history and character." They are also relevant in fixing the maximum term (*People v. Clyne*, 7 Ill.App.3d 121, 287 N.E.2d 72). In the case under consideration, the trial judge stated that although he was considering the acts of robbery committed by the defendant, he was not sentencing him for it. This procedure was proper.

■■ As has often been mentioned, the power of courts of review to reduce sentences "should be applied with considerable caution" (*People v. Taylor*, 33 Ill.2d 417, 424, 211 N.E.2d 673, 677). The sentence here was not as severe as it might appear on its face because the defendant received credit for slightly over 1 year that he had spent on probation. In addition to commenting on the offenses defendant had committed, the court also noted his unfavorable army discharge, failure to support his family, sporadic work record, narcotic involvement and lack of effort towards rehabilitation. The judge's inquiry was thorough and he could well have determined that defendant's potential for rehabilitation was very poor. He did not abuse his discretion in imposing sentence.

A more serious question is whether the trial judge at time of sentencing failed to meet the requirements of the Dangerous Drug Abuse Act. This legislation provides for a comprehensive program involving governmental and private agencies to deal with controlled substance addiction. In *People v. Dill*, this court held:

"We agree with the holding of *People v. Robinson*, 12 Ill.App.3d 291, 297 N.E.2d 621, insofar as it holds that the trial judge, when

dealing with an individual convicted of a crime 'has reason to believe' that the defendant is addicted, is required to exercise his discretion whether or not to invoke the Act. The record must demonstrate that the trial judge has, in fact, exercised that discretion. No formula is intended to be prescribed, but the record must, in some fashion, establish that the trial judge, in the exercise of his discretion, made a deliberate decision to impose sentence or other sanctions available to him under the Code of Corrections in lieu of invoking the provisions of the Dangerous Drug Abuse Act." *People v. Dill*, 23 Ill.App.3d 503, 506, 319 N.E.2d 240, 243.

■■ The defendant's wife testified that he used barbiturates. The People point out that these substances are not listed as a "narcotic drug" under the Controlled Substances Act (Ill. Rev. Stat. 1971, ch. 56½, par. 1102). The combined effect of section 210 of that Act and section 3.01 of the Dangerous Drug Abuse Act, however, is to classify barbiturates as a controlled substance within the meaning of the latter act. Section 2 of the Dangerous Drug Abuse Act states a legislative purpose of research in connection with and treatment for persons addicted to controlled substances. Thus, it would appear to be a purpose of the Act to treat those addicted to barbiturates. In any event, there is no reason to assume that defendant's involvement was limited to that substance. All the other family witnesses and the report of the probation officer made general reference to defendant's involvement with drugs without specificity. The trial judge, himself, called attention to this problem and recommended that the Department of Corrections place defendant in a drug rehabilitation program if feasible. From this record we must conclude that the trial judge had reason to believe that the defendant was addicted.

■■ The effect of *Dill* is not to diminish the trial judge's discretion, nor to require him to invoke the Act when he deems it inappropriate or useless, but to make sure that he considers it as a possible option in dealing with the problem of drug abuse. In the case under consideration as in *Dill* neither court nor counsel made reference to the Act and we cannot tell whether its use was considered by the judge. Accordingly, we reverse and remand for a new sentencing hearing in conformity with the views herein expressed.

Reversed and remanded.

SIMKINS, P. J., concurs.

Mr. JUSTICE TRAPP, dissenting:

The statutes (Ill. Rev. Stat. 1971, ch. 91½, par. 120.1, *et seq.*) defining eligibility for treatment for drug abuse "instead of prosecution or proba-

tion" (par. 120.8), and authorizing drug treatment for persons charged with a crime (par. 120.9), or convicted of a crime (par. 120.10), do not appear to deal with the revocation of probation which has been granted. It seems clear that the legislature did not purport to deal with revocation of probation in the provisions of the noted statutes for the reason that a person properly within the terms of the statute should originally seek probation for treatment rather than probation in the ordinary context.

Here defendant was placed on probation on December 6, 1971, following the effective date of the provisions noted. Probation was revoked in February, 1973. So far as the record shows defendant made application for and procured probation without stating to the court that he was an addict, or introducing evidence in connection with probation which would give the court "reason to believe" that defendant was an addict within the statute defining "an addict" and "addiction." (Ill. Rev. Stat. 1971, ch. 91½, pars. 120.3—3 and 120.3—4.) Nothing of record suggests that at the time of the initial grant of probation the court was called upon to exercise any discretion as to drug treatment in connection with the sentence for the burglary then considered. So far as can be ascertained defendant sought probation free from any obligation to complete treatment.

Upon revocation, however, defendant then presented at the sentence hearing evidence in a context showing that he was "an addict" at the time of the burglary for which probation was granted. In *People v. Williams,* 4 Ill.App.3d 362, 364, 280 N.E.2d 798, defendant denied addiction at the time of seeking probation, but upon revocation of probation granted sought to obtain treatment under the Act. The court said:

> "The question then arises, may he accept probation on that basis, violate his probation by further thefts, and when he is advised that his probation is going to be revoked that he may then say he is an addict and elect to be treated under the Dangerous Drug Abuse Act. This court does not believe that the drafters of this legislation ever contemplated that the use of this Act would ever be strained to the point here sought by the defendant. The Act itself is a laudatory measure but not one designed as a means of escaping confinement by those who deny that they use 'hard drugs' and then attempt to recant."

Here the defendant would obtain the same result by concealing the addiction now asserted.

In *People v. Clinkscale,* 14 Ill.App.3d 226, 302 N.E.2d 181, the court concluded that upon the chronology of events defendant had not had an opportunity to seek treatment at the time of the initial grant of pro-

bation. Upon such premise, the trial court was reversed and the cause remanded. Such exception does not appear in this case.

The principal opinion relies upon *People v. Dill*, 23 Ill.App.3d 503, 319 N.E.2d 240. It does not appear, however, that the issue was presented to the court in terms of whether the statute authorized further probation for purposes of treatment following revocation of probation.

For such reasons I would affirm the trial court.